and Michael Scodro on behalf of CDK Global and Mr. Dillekrath represents the co-plaintiff Reynolds and Reynolds and I will endeavor, I'll keep an eye on the clock to reserve two minutes of the 11 for rebuttal your honor. Could I ask the clerk to set the clock at 11 so we're working off the 11 so it's easier to see what you've got and what you don't have. I appreciate that your honor thank you. There we are, good. Thank you and I'll I will aim to discuss the contracts and takings clause and also field any questions the court may have regarding a CFAA preemption and pendant appellate jurisdiction as well your honors. Starting with the contracts clause at the outset the the Arizona auto dealers here have succeeded in achieving precisely what the contracts clause exists to prohibit your honors. The Arizona law rewrites a specific provision in existing enforceable contracts in a manner that advances the parochial interest of a small subset in the marketplace. The plaintiff's contracts with their dealer clients prohibit any third-party access to the plaintiff's system to their software without plaintiff's permission. In contrast the new Arizona law countermands that and requires the plaintiffs to permit indeed to facilitate the authorization by the dealers of any number of third-party integrators to access the plaintiff's systems your honor not only to access information and to retrieve information from those systems but at the same time to write back to add ones and zeros to those systems. This is no minimal alteration of the contractual obligation in the words of allied structural steel rather this goes to the very core of the contracts in these cases namely the ability to sublease what is a multi-million dollar function in terms of data integration and this obvious effort at overturning a particular provision in these contracts by inventing a distinction between direct and indirect access to plaintiff software but of course that distinction exists nowhere on the face of the contract rather as we point out in quoting the contract provisions on pages five and six of our opening brief those contracts prohibit unauthorized access period and whether you define that using lay dictionaries or more technological definitions as laid out in our brief all of those definitions easily encompass what's at issue here namely the exchange of information taking from and writing to our systems. Okay counsel I mean suppose we agree with you that this law is a substantial impairment of your contractual interest the supreme court has told us for you to win you also have to show that it's not you know an appropriate and reasonable way of advancing a legitimate public purpose and that test seems to be a fairly deferential look at the legislature in the exercise of its prerogative to engage in economic regulation so why does it fail that part of the test? Thank you your honor it courts answering this question courts that are endeavoring to distinguish between on the one hand laws that aim to advance parochial interests even if by the way there is some incidental public benefit on the one hand and laws that truly serve a broad social purpose which is the standard on the other hand in endeavoring to distinguish between the two courts typically begin with legislative findings that identify the purpose and try to link that purpose to the end goal identified and explain why the law advances that goal well we have none of that here and so instead we're left with two things one we have the the title of the statute which speaks in terms of data secrecy data privacy your honor and security but on this record it is implausible to suggest that the provisions that are challenged here provisions that require a huge number of new access points to software systems it is implausible to suggest that that somehow meaningfully advances the goal of data security and it comes as no surprise ultimately your honor that plaintiffs experts are unwilling to say that mr uh andrew is willing to say that at the end of the day perhaps it is sort of security neutral the provision that we're talking about and their other expert mr kesterson is willing to say he acknowledges that by adding more people more more entities that are accessing the system there are risks involved but he offers certain mitigation certain mitigating factors but none of that comes close to suggesting that this affirmatively advances that the provisions we challenge affirmative affirmatively advance security so then defendants say well as to this provision perhaps it can be defended not on a security basis but as pro-competitive in the marketplace but here there's absolutely nothing in the record to suggest that the arizona legislature included this provision and changed the uh sort of leveled the playing field to use a word that the eighth circuit recently used in striking down a contract not so different in north dakota in 2019 to level the playing field there's nothing to suggest that that that there was anything else at work indeed the only bit of evidence we have from the legislative history which is fairly scant and spread out over pages 1181 to 1204 in the excerpts of record all we have there is a single lobbyist for the arizona dealers association and she quite frankly and candidly advances a purely parochial interest on the part of auto dealers that they don't want to be paying for integration or don't want their vendors to be paying for the integration as they agreed to in their existing contracts so the only bit of evidence that does exist on the record points squarely in the direction of this being an effort to advance a purely parochial interest on the part of auto dealers in the state do you think that the state needs to come up with evidence of what the legislature's actual motive was or is it enough to uphold the law for us to find that a conceivable purpose of it is a legitimate one well your honor the the law is clear that this is not rational basis and indeed the uh the north dakota case eighth circuit to which i referred a moment ago which also involved dealers uh and is as i say i think that's squarely on point in terms of this case makes very clear that and the standard itself as articulated by the supreme court in terms of a legitimate and significant public purpose uh that it uh that is being necessarily advanced by the law is a far cry from rational basis so in answer to your honor's question the cases allow courts to the purpose but whereas here there are no such findings and this was a problem encountered by the eighth circuit and its decision as well your honor whereas here there is nothing on the face all we have to go on at this point is we have a provision advanced by a narrow group that advanced that is uh directly um can i can i interrupt for just a minute but on this very point uh are you saying that the effect of this statute will not be to increase competition are you denying that it increases competition uh yes your honor in fact what it's what it creates how can you deny that increased competition it allows uh other integrators to come in offer a lower price than your offering well it sounds like competition to me sure uh two two quick points on that your honor first by requiring us to provide something that we have devoted and invested tens of millions of dollars uh into at call at direct costs and and mr dillicraft may speak to uh what exactly that means which is which is a vague term but whatever it means it means we're not permitted to recoup profits we would be subsidized the market that your honor describes by providing this to the marketplace all of the work having been done uh at at cost and so that is not promoting an efficient market it's actually requiring us to provide our services at drastically below market prices and i should add that so far so far i've not heard you deny that this increases competition i've heard you didn't i've heard you complain that it's going to cost you some money your honor by requiring us it is it is not promoting competition it's unclear what will happen here frankly but by requiring us to give up the restrictions on sub licenses that are embedded in our contracts there there is no reason to believe this would be a more competitive market we would be providing these services at uh at cost you already have other dms providers like the plaintiffs here who are already competing with us the record in this case shows that combined the plaintiffs are about 65 percent of auto dealers in arizona so you have other uh other dms providers who may be offering uh and often are a different bargain that is they do not put a restriction on sub licensing these uh uh systems and so the competition exists by requiring one party to subsidize the market at at uh at cost um there's no reason to believe that will create an efficient market and i i realize i'm eating into potential rebuttal time if i you may want to save at this point yeah thank you your reynolds and reynolds section 106 of the copyright act provides copyright holders the right to reproduce copyrighted acts to distribute copies and to prepare derivative works and that's in order to effectuate the purposes of the statute which are to encourage the creation of original works by giving authors certain exclusive rights in those works and protecting their economic interests there are three separate and independent ways in which the arizona dealer law conflicts with and is therefore preempted by the copyright act first the use of the open api method required by the statute causes a copy to be created in the memory of plaintiff's computers second is there anything in the record that tells us how long a copy exists no your honor there is nothing in the record that speaks to that um that was not an issue that was raised below by defendants and the case law if you look at mai which uh specifically deals with copying of uh software into ram in a very similar manner uh held that it does constitute a copying without regard to the uh temporal nature of it there there was some discussion for example in cartoon networks which is a out-of-circuit case uh about the temporal element of copying there it dealt with buffering of a movie that was being downloaded or a television program and there i think as we all know if you've ever tried to download a movie that buffering is very short it's a matter of seconds and there was a factual record on that so i just want to make sure i'm clear so your your client has the burden here um and so your position is that there's existing authority that demonstrates that you don't have to talk about how long the copy exists even though the definition includes a temporal aspect to it well i think your honor mai does hold to that effect that where you're talking about the copying of uh into ram as we are here that the ninth circuit is held that that is sufficient to constitute a sufficient amount of time for an infringement without having that discussion of the temporal element and i mean if you consider the type of copying that might take place here an authorized contributor could run 24 7 uh under the law if they want which would certainly increase the amount of time that that would be held in the memory of the ram so there's there's no specific discussion in the record but as a matter of basic computer science i think uh you could argue that there is a significant amount of time that would be involved even for the most basic of queries but certainly allowable under the law but this is not an issue that was raised until the uh i'm not sure if it was a footnote or in here it was nothing that was raised in the briefing below can your clients um comply with the statute and the access that's required without allowing copying by the others no your honor they cannot uh and in three separate ways i thought the district court held otherwise well i think that's one of the errors the district court made your honor and the errors were primarily legal errors and what the district court did your honor was i think apply the wrong standard to one of the three ways in which we are alleging that uh copying would take place the court looked only at the issue of copying of the api and there your honor what happens is the api and the integrator need to be speaking the same computer language so there's certain uh i think the defendants refer to it as syntax if i'm not mistaken mr kesterson they're expert and it's in their brief as well so that syntax needs to be copied between the two computers and that would include things like field names and instructions on how the computer is to operate and what the court did your honor was i believe it only looked at the issue of whether there would be visibility uh to the third-party integrator rather than looking on whether a copy would be made which is really the salient issue under the google oracle case and this is very similar to that uh while google oracle spoke uh specifically about declaring code and the structure sequence and organization the type of information that would need to be copied is very similar here um and to give a concrete example your honor a hypothetical one if an integrator wanted to do a poll of all mercedes that were purchased in phoenix uh serviced at a dealership had the tires rotated in oil change they would need to copy the field names which are a creative element that were captured by rentals or cdk along with an instruction could be ser or fin whatever there's a number of alternatives they could choose from and that's an important aspect of the google oracle case there's a creative element in choosing the field names and choosing the instructions and combining that and that's the copy that has to be made but why aren't those i mean in google or in oracle i mean google was wanted to copy the declaring code so that developers could use java in its environment um and it seems like what's happening here is not sort of copying the whole declaring code it's just using elements of it that are basically functional elements like you have to use them in order to ask for those particular pieces of information that you're asking for and in order to make the api work um so can you that seems like a distinction from what was going on in oracle if i'm understanding the technology correctly well i'm not sure well i think you're you're right to a certain extent your honor in that the elements that are copied are used as part of the access of the through the api but there's still a copy being made and that's really the salient point under google and oracle is there a protectable copyrightable interest and is there a copy being made and i think uh it's the case that that's factually correct and as a matter of law google talks about are there alternative choices available in the sort of organization that's made and the type of declarations that were at issue in oracle are very similar similar excuse me to the example i just gave i believe there the one they cited was uh it was mx and then parentheses and it was like one integer and another integer is it greater than the other and that's really functionally exactly what you would be doing here is a query and then a series of uh identifiers or field names you can call it syntax as mr kesterson did you can call it sequence structure and organization i think it's close to the declarations that were at issue in uh in oracle uh but is there a copy being made of those elements are they a creative choice that's really the keys whether um the purpose of why that's why it's being accomplished is not really anything that's covered by the copyright laws it's the fact that a copy is being made um and let me speak briefly to the third category your honors and that is the um compo the data compilation that's being made and it's inherent in the broad nature of the definition of protected dealer data that data compilations are available to the authorized integrator and uh mr andrew described the definition as a catch-all which means that all of the data that goes in can come out there's creative choices made and how that information is compiled it includes potentially data that's put in there um by plaintiffs so that it's certainly entitled to protection by uh the copyright laws and i'd refer the court to uh experience info solutions which held that even a list of names correlated with addresses is entitled to protection here it's far broader than that um your honors i'm running low on time i'm happy to answer any questions on vagueness otherwise we can submit that on the papers and i'll reserve the balance of okay why don't you reserve and you'll have a little chance to respond thank you your honor and we on the other side we've got mr ho and mr roysdon 15 minutes and five i'm not sure the order in which you wish to speak up to you good afternoon your honor derrick ho from callaghanson for the arizona automobile dealers association i'll be going first and we're happy to have the clock just be set at 20 and i'll try to keep track of the time that way unless the court prefers otherwise it's easier for me if it's 15 there we go so okay count 15 very well please the court the arizona dealer law protects consumers and competition by preventing companies that store dealer data from holding that data hostage for their own financial gain the district court correctly rejected plaintiffs facial pre-enforcement attempt to use implied preemption and the constitution to shield themselves from classic economic legislation i was planning to take the copyright act issue first although my friends took it in the opposite order and on the copyright act issue i think it's important to emphasize that this is not express preemption the copyright act of course has an express preemption provision this is not impossibility preemption this is implied preemption so the and it's a facial challenge so the very limited inquiry that this court has to engage in is is there anything on the face of the arizona dealer law that conflicts with something on the face of the copyright act and i think the district court was quite right in saying that the answer to that question is clearly no there is nothing on the face of the copyright act that prevents states from enacting what is ordinary economic legislation akin to data portability and interoperability legislation nothing and looking at it from the other side nothing in the arizona dealer law expressly authorizes copying distribution creation of derivative works on the face of the two statutes and that's what the supreme court encourages this court to look at in the context of implied preemption there simply is no conflict between the two statutes and i think the district court really could have ended its analysis there instead it went on to i would say indulge the plaintiffs attempt to create a different kind of facial challenge and that kind of facial challenge is to argue that there is no way that they can comply with the law without allowing an abridgment of their exclusive rights under the copyright act i question whether that is an appropriate mode of analysis under uh for purposes of a facial implied preemption challenge for the reason that justice kennedy's opinion in arizona against the united states gave which is in essence the exercise that the plaintiffs are asking the court to engage in is to speculate about all of the different ways in which the law might be implemented and then to try to ask the negative in other words is there some way that we can are all of the ways that we can conceive of ways that would require an act of infringement under the copyright act i don't that that is a mode of analysis more what suited to an as applied challenge but the district court engaged it in any way and found the plaintiff's evidence wanting and the district court was absolutely right about that the plaintiffs did not prove that there is no way to comply with the law without allowing a violation of their exclusive rights they cite three copyrighted works one is dms software which they say they would have to load into their internal ram on their own systems in order to respond to an api request there are three reasons that that proof didn't succeed one as the district court held their proof didn't they did not actually prove that they have to create new copies to respond to an api request the in footnote eight of the district court's opinion the um the the court concluded that what mr hall said at the trial uh was not sufficient to establish that point all he said was that reynolds's system as it's currently designed would load a copy of the software into ram he did not say or even attempt to prove that the only way one could design an api is to have a new copy um be uploaded into ram and to the contrary defendants uh technology and computer expert coy kesterson testified at length that that isn't necessary you can use existing copies of the software that are already uploaded into ram because after all this is software that is being used by many other people on a routine basis including the dealers that license it you can use already existing copies if you want to design the that's what the district court found that's not clear error two even if it were true that plaintiffs would have to make a new copy it's plaintiffs that would be making the copy not the api users under the very volitional acts doctrine that the plaintiffs cite in their reply brief the question of who makes the copy is a question of who selects the content and we didn't have a chance to respond to this point because it was made in their reply brief so i would commend to the court justice scalia's decision in the area case where he explains at length the notion of what a volitional act is and what he explains and this isn't controversial uh it's not the part of the decision that was controversial the volitional act requires that someone be the person who selects the content in other words you decide whether you're targeting copyrighted work or non-copyrighted work here the evidence at the hearing was absolutely clear that the user of an api has no ability to dictate what whether the api responder copies anything in terms of software into ram what software it copies it has no ability to dictate whatsoever how the api responds to the request so under the volitional act doctrine it is not correct to say that the api user is making a copy if anyone is making a copy and even on plaintiff's own theory it is plaintiffs themselves and a law that says that you have to make a copy of your own work does not violate the exclusive rights that the copyright act confers on copyright owners as a matter of federal law because that right of exclusivity is a right to exclude other people from copying or reproducing or distributing and um mai which is the central case on which plaintiffs rely has nothing to say about that because it was undisputed there that the repairmen were the ones who were making the copy not mai itself so there was no question of i'm not sure i totally agree with that one uh even if it is the plaintiffs who are making the copy if as they allege they are making the copy because they are required to do so and they are making the copy for the benefit of others that sounds as though they're not just making the copy because they want to for their own purposes so i'm not sure that the fact that they're making the copy themselves is by itself determinative well judge fletcher i think that with respect to copyright act preemption it is determinative because the only exclusive right that they say is infringed is the exclusive right to make a copy and if all and if no one else is enabled by the law to make such a copy that exclusive right is not being infringed now it may be that the making of the cop their making of the copy does have benefits of economic benefits for other people but the copyright act doesn't protect copyright owners against all potential uses of copyrighted works even uses that might have economic benefits to the user it limits the protection to the enumerated exclusive rights copying reproduction i'm sorry distribution creation of derivative works so i think it is correct that if nobody else if all that happens is that they effectively are told you need to make a copy of your own software on your own systems that is not a violation of such is not inconsistent with section 106 and then the third reason that their proof fails is the reason that i think may have judge hunsaker's question which is there is another element of copyright infringement or of what a copy requires that plaintiffs never even attempted to prove and that is that any copying into internal ram would have to be again necessarily in order for them to comply with the law would necessarily have to be non-transitory there was no proof of that whatsoever no effort even to prove that and so for all three of those reasons the district court even on the assumption that you can analyze the facial implied preemption challenge in this way did not abuse its discretion in holding that plaintiffs had failed to show a substantial likelihood on the api declaring code quickly there are two elements of the copyright act that are presumed undisputed in google against oracle that are that again they made no effort to prove in this case and that is that originality and creativity in google against oracle no question sun uh it's not disputed that sun's um uh api was both original and creative but here again what the district court found was that the law doesn't even require that plaintiffs use their own declaring code in fact rental the evidence of rentals just borrows declaring code from star uh the standardized uh the the stands for uh technology and automotive uh and and so they don't even have to use their own code which is of course the originality requirement second even if they did have to use their own code if they don't have to use creative code as the Supreme Court oral argument in google creativity the the analogy was raised of the QWERTY keyboard that arguably is creative but a keyboard that just says abcdefg would not be creative that's feist nothing in the dealer law says that you have to use creative declaring code nothing says that reynolds or cdk have to use the wonderful creative declaring code that they currently use in their current apis if they want to they can use the equivalent of an abcdefg keyboard and there are lots of declaring codes out there like the star declaring codes that are not creative at all get open paren vin and paren might be a something that would cause the computer to get a vin number there's nothing creative about that um and and so for both of those reasons again the plaintiffs just did not prove that they could not comply that nobody could comply with the law without um without uh conflicting with the purposes of the copyright act let me turn to the contracts clause um in my remaining time one we we do think that the district court was correct in finding as a matter of fact that there was no impairment not even not to mention a substantial impairment of the contract and the reason that he found that was the evidence was crystal clear at the hearing that an api allows a user to obtain data without ever obtaining access to a system that is the whole raison d'etre of a an api and so their contracts which say no third party cannot obtain access to the system is not infringed because access in this context is reasonably interpreted to mean a physical intrusion onto the system just as that term is used in cfa and i know that mr sodro says that he thinks that the contract ought to be construed more broadly but clearly access can be construed in that narrower way and i think the district court was correct on again a facial challenge where there is a presumption of constitutionality to construe the contract in the narrow way against the drafter where there is an ambiguity in what access means whether again it's physical intrusion or some broader notion so the district court i think didn't abuse its discretion or commit clear error in finding no impairment and then as to um as to the second step of the analysis one it's plaintiff's burden to show that there is no uh significant purpose that's a difference between this circuit's law and the law of the eighth circuit so the eighth circuit case that they rely on so heavily just isn't good law in this circuit but at any rate there was ample precedent i'm sorry ample evidence presented to the district court of that purpose we had an expert that had decades in the industry explaining how important it was to make sure that dms companies could not monopolize this data as they tried to do after decades of acknowledging that anybody should be able to obtain it freely we had a fact witness from uh from another dms company that explained how uh that what all the negative consequences of this kind of data hostage taking we had the declaration of ms farrow who was one of the architects of the bill explaining the impact of this on dealers to judge miller's question it is purpose and not motive that's the issue so the fact that there were no legislative findings is really neither here nor there at any rate the panel has an amicus brief from the state of legislative findings precisely on the pro-competitive effects and the importance of those pro-competitive effects and frankly those pro-competitive effects are apparent from the face of the law as judge fletcher suggested and mr scodro ended i think by saying that he's not sure whether the law will be pro-competitive or anti-competitive well that is precisely why under the contracts clause this court ought to defer to the legislative judgment of the state of arizona of oregon of montana of the other states that have enacted this law and rather than um rather than striking this uh this law down thank you mr over my time and my apologies to mr royston if i've eaten into it if the court has no further questions i will turn it over to him i will save you from any disagreement by putting five minutes on the clock for him thank you your honor i appreciate it mr royston to you may it please the court solicitor general bo royston on behalf of arizona attorney general mark bernovich i realize it's late in the day and i i do not anticipate taking up my entire time once the court has questions i'd like to briefly focus on three issues uh first the states have a strong interest in passing laws such as the dealer data law to regulate their marketplaces and protect their consumers and data privacy two other states in this circuit montana and oregon have enacted their own dealer data laws and this law in arizona passed unanimously in both our house and senate second the pre-enforcement challenge is particularly inappropriate here because there are many lawful ways that the state can enforce this law appellants attempt to cut off any enforcement is improper and instead issues can and should be resolved in as applied challenges to to any enforcement action third many many of appellants arguments if adopted would lead to absurd results and tie the state's hands in passing legislation to regulate their respective marketplaces as we transition to a digital economy for example appellees read the cfaa as precluding any sort of consumer protection or data privacy regulation by the states if it requires um a system to interact with third parties similarly appellants allege that it would be a taking to require a commercial database to store even one bit of data by an authorized user with that i will sum up by saying as i see this as a representative of the state this this is really about our ability to regulate a distinct system we are not going inside the system we're simply saying allow the system to be interoperable with a separate system i don't think plaintiffs have met uh any of their constitutional preemptive challenges here i think the district court was correct to deny their preliminary injunction can i ask you just a uh a question about the jurisdictional argument in your brief um the i think it's the cfaa and vagueness arguments were were not addressed by the court in ruling on the pi because they had already been dismissed uh and you say we we don't have jurisdiction to consider them but the they were they were in the motion for a pi and the order is one denying that motion um so why why aren't they necessarily part of the order even if the court didn't say anything about them individually correct we think procedurally because the court issued two different orders and first denied them in the motion to dismiss uh before reaching the pi you know it's set the table for the pi and the court's appellate jurisdiction is kind of based on what table the district court said but if the court disagrees and and thinks that it can reach those i think we feel very comfortable that neither the cfaa nor vagueness uh justified a preliminary injunction in this case your honor okay any further questions from the bench thank you very much well Mr. Codrell will put two minutes on the clock for you and Mr. Dickrath the same Dillagrath the same two two minutes thank you very much your honor let me just address a couple of the points raised uh by your honor and also uh by Mr. Ho there is nothing to be clear there is nothing pro-competitive indeed it's anti-competitive to require someone who a party who has invested tens hundreds of millions of dollars in a system in the method of organization only to require them to provide it into the marketplace at cost without a return on their investment and that's what's being demanded here when i said um i think Mr. Ho has it backwards when i said we don't know what will happen the fact of the matter is what i meant is there's no there are no legislative findings even identifying a market meeting rectifying under these circumstances we don't know whether it's going to be the third-party vendors who will simply take this at cost uh whether will there be other integrators the fact of the matter is to the extent there is a need for any competition in this space it already exists the competition is between dms providers like plaintiffs here who choose not to permit sub-licensing and charge accordingly of their dealer clients and those other nearly half the market in in arizona that do the opposite and that take a different approach and charge accordingly because they do provide a sub-license it would be as if westlaw were a state law were passed such that my firm could uh give out westlaw passwords to uh other and third-party entities and they would and westlaw would only be able to charge them at cost that would not be pro-competitive because westlaw would not be receiving the return on the investment in organizing the data in the manner that we have invested to do so here on top of all this as i said there are no findings by the legislature when council was asked for the defendants by the district court what evidence is there that there's this this pro-competitive motivated the legislator the response was we'd have to look at bobby sparrow's testimony okay that's that's your two minutes if you would like to sum up thank you your honor and just to conclude bobby sparrow is the aforementioned lobbyist we would urge the court to look at the legislative history that's provided particularly page 1186 and the eighth circuit's recent decision decision and equipment manufacturers we can clearly establish that as a matter of law uh the uh the contracts we're entitled to judgment on the contracts clause as well as the takings claims and the other claims raised your honor okay thank you mr dillicraft you're you're muted my apologies uh thank you your honor just three quick points first your honor i think the legal standard urged by my friend mr ho and apparently undertaken by the court below falls into precisely the issue and problem identified in us v arizona and that is that they assume that the law is not on its face and then point out allegedly constitutional applications of a statute that conflicts with congressional intent and therefore is preempted by the supremacy clause and i think it's a fundamental misreading of salerno to assume that one can engage in uh invoking counterfactuals and using those to demonstrate that a law is valid under the supremacy clause and that's not what dissent is interesting it doesn't change the notion of volitional conduct uh the volitional conduct test and you can see it in the injunction in mii who causes the copy to be made as as i believe judge fletcher pointed out there is someone causing this copy to be made reynolds has no interest cdk has no interest in making this copy but for the third party integrator causing it to happen so i think the precedent is well established that it's the individual or the entity that's causing the copy to be made that matters the final notion that i would bring up your honor is the creativity and originality of the apis there is testimony in the record it's at er 308 and 309 it's mr hall's testimony and your honor i know mr ho indicated that the judge uh did not find mr hall's testimony compelling as to a particular point in footnote eight i think what he said is it's insufficient to prove a point that was not a point that should have been at issue that was a legal error by the judge in assessing the wrong point so i think your honor we believe our copyright claim is strong in the three separate and independent areas that i've identified and urged the court to reverse the lower court's decision thank you your honors okay thank you thank all sides for very useful arguments the case of cdk global versus branovich is now submitted for decision and that completes our arguments for this afternoon indeed for the week thank you very much thank you ron the support for this session stands adjourned
judges: W. Fletcher, Miller, Hunsaker